**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **ARLINGTON TECHNOLOGIES LLC,** | § § § | |
| **Plaintiff,** | § § | CIVIL ACTION NO. _____ |
| **v.** | § § | |
| **ZOOM COMMUNICATIONS, INC. F/K/A ZOOM VIDEO COMMUNICATIONS, INC.,** | § § § § | **JURY TRIAL DEMANDED** |
| **Defendant.** | § | |

## PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Arlington Technologies LLC ("ATL" or "Plaintiff") files this Complaint against Defendant Zoom Communications, Inc. f/k/a Zoom Video Communications, Inc. ("Defendant" or "Zoom") for infringement of U.S. Patent No. 7,668,304 (the "'304 Patent"), U.S. Patent No. 8,373,743 (the "'743 Patent"), U.S. Patent No. 8,416,937 (the "'937 Patent"), U.S. Patent No. 8,644,886 (the "'886 Patent"), U.S. Patent No. 8,700,019 (the "'019 Patent"), and U.S. Patent No. 9,019,869 (the "'869 Patent," and collectively, the "Asserted Patents").

## THE PARTIES

1.      Arlington Technologies LLC is a Texas limited liability company, with a principal place of business in Allen, TX.

2.      Defendant Zoom Communications, Inc. f/k/a Zoom Video Communications, Inc. is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 55 Almaden Boulevard, 6th Floor, San Jose, CA 95113. Zoom Communications, Inc. f/k/a Zoom Video Communications, Inc. is registered to conduct business in the State of

Delaware and has appointed The Corporation Trust Company, located at 1209 Orange Street, Wilmington, Delaware, 19801 as its agent for service of process.

3.      On information and belief, Defendant is a multinational information technology company that develops and provides cloud-based communication and collaboration services, including phone, messaging, and video systems. Defendant sells its products and services to customers, including to customers in this District.

4.      On information and belief, Defendant operates and owns the Zoom.com and Support.Zoom.com websites, through which it markets, offers, distributes, and provides technical support for its cloud-based communication and collaboration services, including phone, messaging, and video systems, throughout the United States including in this District.

5.      On information and belief, Defendant places, has placed, and/or contributed to placing Accused Products (as more particularly identified and described throughout this Complaint) into the stream of commerce via an established distribution channel knowing or understanding that such Accused Products would be sold in the United States, including in this District. Defendant has also derived substantial revenues from infringing acts in this District, including from the sale of the Accused Products.

6.      On information and belief, Defendant is engaged in making, using, selling, offering for sale, and/or importing, and/or inducing its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, the products and services accused of infringement, such as cloud-based communication and collaboration services, including phone, messaging, and video systems.

7.      Prior to the filing of the Complaint, Plaintiff attempted to engage Defendant and/or its agents in good faith licensing discussions related to the Asserted Patents, including by sending

them correspondence on March 8, 2024, notifying Defendant of the need to license the Asserted Patents. Defendant's past and continuing sales of its devices (i) willfully infringe the Asserted Patents and (ii) impermissibly take the significant benefits of Plaintiff's patented technologies without fair compensation to Plaintiff.

8. Through offers to sell, sales, imports, distributions, and other related agreements to transfer ownership of Defendant's products and/or services accused of infringement, such as cloud-based communication and collaboration services, including phone, messaging, and video systems, with distributors and customers operating in and maintaining a significant business presence in the U.S. and/or its U.S. subsidiaries Defendant does business in the U.S., the State of Delaware, and in this District.

## JURISDICTION AND VENUE

9. This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11. This Court has specific and general personal jurisdiction over Defendant because Defendant is a citizen of the State of Delaware. Regardless, and consistent with the requirements of the Due Process Clause of the United States Constitution and the Delaware Long Arm Statute because, *inter alia*, (i) Defendant has engaged in continuous, systematic, and substantial business in Delaware; (ii) Defendant is registered to do business in Delaware; (iii) Defendant is incorporated in this District; (iv) Defendant has committed and continues to commit, acts of patent infringement in this State and in this District. Such acts of infringement include the making, using, testing, offering for sale, and selling of Accused Products (as more particularly identified and described

throughout this Complaint, below) that leverage and infringe the inventions of the Asserted Patents in this State and this District and/or inducing others to commit acts of patent infringement in this State and District.

12.     On information and belief, Defendant has purposefully and voluntarily placed, and is continuing to place, one or more Accused Products into the stream of commerce through established distribution channels (including the Internet) with the knowledge and intent that the Accused Products are and/or will be used, sold to and purchased by consumers in the United States, this State, and this District; and with the knowledge and expectation that the Accused Products (whether in standalone form or as integrated in downstream products) will be imported into the United States, this State, and this District.

13.     In addition, Defendant has derived substantial revenues from its infringing acts occurring within this State and this District. It has substantial business in this State and this District, including: (i) at least part of its infringing activities alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported, and services provided to Delaware residents. Defendant derives benefits from its presence in this District. For example, Defendant receives revenue from sales and distribution via electronic transactions conducted on and using at least its website located at www.Zoom.com, and its incorporated and/or related systems.

14.     In addition, Defendant has knowingly induced, and continues to knowingly induce, infringement within this State and this District by advertising, marketing, offering for sale and/or selling Accused Products (as more particularly identified and described throughout this Complaint) that incorporate the fundamental technologies covered by the Asserted Patents. Such advertising, marketing, offering for sale and/or selling of Accused Products is directed to consumers,

4

customers, integrators, suppliers, distributors, resellers, partners, and/or end users, and this includes providing instructions, user manuals, advertising, and/or marketing materials that facilitate, direct and encourage use of infringing functionality with Defendant's knowledge thereof.

15.    Defendant has, thus, in the many ways described above, availed itself of the benefits and privileges of conducting business in this State and willingly subjected itself to the exercise of this Court's personal jurisdiction over it. Indeed, Defendant has sufficient minimum contacts with this forum through its transaction of substantial business in this State and this District and its commission of acts of patent infringement as alleged in this Complaint that are purposefully directed towards this State and District.

16.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b) because Defendant resides in this District under the Supreme Court's opinion in *TC Heartland v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017) through its incorporation in this District.

## **DEFENDANT'S PRE-SUIT KNOWLEDGE OF ITS INFRINGEMENTS**

17.    Prior to the filing of the Complaint, Plaintiff attempted to engage Defendant and/or its agents in good faith licensing discussions related to the Asserted Patents, including by sending them correspondence on March 8, 2024, notifying Defendant of the need to license the Asserted Patents. Defendant's past and continuing sales of its devices i) willfully infringe the Asserted Patents and ii) impermissibly take the significant benefits of Plaintiff's patented technologies without fair compensation to Plaintiff.

18.    The Accused Products addressed in the Counts below include, but are not limited to, products and services identified in ATL's letter to Defendant. Defendant's past and continuing

sales of the Accused Products (i) willfully infringe the Asserted Patents and (ii) impermissibly usurp the significant benefits of ATL's patented technologies without fair compensation.

## THE ASSERTED PATENTS AND TECHNOLOGY

19.    ATL is the sole and exclusive owner of all right, title, and interest in the Asserted Patents and holds the exclusive right to take all actions necessary to enforce its rights in, and to, the Asserted Patents, including the filing of this patent infringement lawsuit. Indeed, ATL owns all substantial rights in the Asserted Patents, including the right to exclude others and to recover damages for all past, present, and future infringements.

20.    The '304 Patent is entitled "Display hierarchy of participants during phone call." The '304 Patent lawfully issued on February 23, 2010, and stems from U.S. Application No. 11/339,913, which was filed on January 25, 2006.  A true and correct copy of the '304 patent is attached hereto as Exhibit 1.

21.    The '743 Patent is entitled "System and method for playing back individual conference callers." The '743 Patent lawfully issued on February 12, 2013, and stems from U.S. Application No. 12/403,624, which was filed on March 13, 2009.  A true and correct copy of the '743 patent is attached hereto as Exhibit 2.

22.    The '937 Patent is entitled "System and method for changing conference moderators during a conference call." The '937 Patent lawfully issued on April 9, 2013, and stems from U.S. Application No. 12/978,742, which was filed on December 27, 2010.  A true and correct copy of the '937 patent is attached hereto as Exhibit 3.

23.    The '886 Patent is entitled "Ring-tone messaging service." The '886 Patent lawfully issued on February 4, 2014, and stems from U.S. Application No. 10/801,960, which was

filed on March 15, 2004.  A true and correct copy of the '886 patent is attached hereto as Exhibit 4.

24.     The '019 Patent is entitled "Method and apparatus for dynamic device pairing." The '019 Patent lawfully issued on April 15, 2014, and stems from U.S. Application No. 13/595,626, which was filed on August 27, 2012.  A true and correct copy of the '019 patent is attached hereto as Exhibit 5.

25.     The '869 Patent is entitled "System and method to suppress voice prompts in SIP calls." The '869 Patent lawfully issued on April 28, 2015, and stems from U.S. Application No. 13/707,691, which was filed on December 7, 2012.  A true and correct copy of the '869 patent is attached hereto as Exhibit 6.

26.     The claims of the Asserted Patents are directed to patent-eligible subject matter under 35 U.S.C. § 101. They are not directed to an abstract idea, and the technologies covered by the claims comprise systems and/or ordered combinations of features and functions that, at the time of invention, were not, alone or in combination, well-understood, routine, or conventional.

27.     To the extent necessary, ATL has complied with the requirements of 35 U.S.C. § 287, such that ATL may recover pre-suit damages.

## COUNT I

### (Infringement of U.S. Patent No. 7,668,304)

28.     Plaintiff incorporates the preceding paragraphs herein by reference.

29.     This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq*.

30.     Plaintiff is the assignee of the '304 Patent, with ownership of all substantial rights in the '304 Patent, including the right to exclude others and to enforce, sue, and recover damages for past, present, and future infringements.

31.     The '304 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code after a full and fair examination.

32.     Defendant has and continues to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '304 Patent in this District and elsewhere in Delaware and the United States.

33.     Defendant designs, offers for sale, uses, and sells services, such as Zoom Meetings, Zoom Events, and Zoom Webinars (the "'304 Accused Products"), in a manner that infringes the '304 Patent.

34.     Defendant directly infringes the '304 Patent under 35 U.S.C. § 271(a) by using, making, offering for sale, selling, and/or importing the '304 Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '304 Patent.

35.     For example, Defendant infringes claim 1 of the '304 Patent[1] via the '304 Accused Products. Defendant, via the '304 Accused Products, including Zoom Meetings, performs a "method of enhancing a conference call." For example, Zoom performs enhanced conference calling using its Zoom Meeting platform:

---

[1] Throughout this Complaint, wherever ATL identifies specific claims of the Asserted Patents infringed by Defendant, ATL expressly reserves the right to identify additional claims, products and/or services in its infringement contentions in accordance with applicable local rules and the Court's case management order. Specifically identified claims throughout this Complaint are provided for notice pleading only.



Source: https://www.zoom.com/en/products/virtual-meetings/ (accessed on May 29, 2025).

36.     The '304 Accused Products connect "first and second telecommunication devices to create a live conference call, the first and second telecommunication devices being associated, respectively, with first and second participants." For example, Zoom connects two or more participants using independent telecommunications devices (e.g., smartphones) to a conference call:



Source: https://www.zoom.com/en/products/virtual-meetings/ (accessed on May 29, 2025).

37.     The '304 Accused Products determine "characteristics of each of the first and second participants." For example, Zoom determines whether participants are actively speaking:



## Speaker view

Speaker view will switch the large video window between who is speaking with 3 or more participants in the meeting. If it is just you and one other participant, your video will be smaller at the top and their video will appear below.

Pinning a participant will keep them as the largest video for your view of the meeting, while spotlighting will do the same but for everyone in the meeting.

Source:
https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0063672#h_01FFTJBY
ENO8HGY727RWX9KCSX (accessed on May 29, 2025).

38.     The '304 Accused Products create "a hierarchal structure of the first and second participants based upon their respective determined characteristics, wherein the first participant has a first hierarchical ranking and the second participant a second hierarchical ranking, and wherein the hierarchical structure indicates the relative values of the first and second hierarchical rankings." For example, Zoom ranks an active speaker at a first hierarchical ranking (larger window) and nonspeaking participants at a second hierarchical ranking (smaller windows):

## Speaker view

Speaker view will switch the large video window between who is speaking with 3 or more participants in the meeting. If it is just you and one other participant, your video will be smaller at the top and their video will appear below.

Pinning a participant will keep them as the largest video for your view of the meeting, while spotlighting will do the same but for everyone in the meeting.



Source:
https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0063672#h_01FFTJBY
ENO8HGY727RWX9KCSX (accessed on May 29, 2025).

39.    The '304 Accused Products, during the live conference call, provide "the hierarchical structure to at least the second participant." For example, Zoom displays to all participants of a conference call the active speaker at a first hierarchical ranking (larger window) and non-speaking participants at the second hierarchical ranking (smaller windows):



Source:
https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0063672#h_01FFTJBY
ENO8HGY727RWX9KCSX (accessed on May 29, 2025).

40.     The technology discussion above and the exemplary '304 Accused Products provide context for Plaintiff's infringement allegations.

41.     At a minimum, Defendant has known of the '304 Patent at least as early as the filing date of the Complaint. In addition, Defendant has known about the '304 Patent since at least March 8, 2024, when Plaintiff sent correspondence to Defendant via FedEx alerting Defendant to its infringement.

42.     On information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the '304 Accused Products that include or are made using all of the limitations of one or more claims of the '304 Patent to directly infringe one or more claims of the '304 Patent (e.g., claim 1, as discussed above) by using, offering for sale, selling, and/or importing the '304 Accused Products. Since at least the notice provided on the above-mentioned date, Defendant does so with

knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '304 Patent. Defendant intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the '304 Accused Products, creating and/or maintaining established distribution channels for the '304 Accused Products into and within the United States, manufacturing the '304 Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and testing the '304 Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. For example, Defendant advertises and provides technical support to its customers using '304 Accused Products at Zoom.com and Support.Zoom.com.

43.    In the alternative, on information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has contributorily infringed, under U.S.C. § 271(c), one or more claims of the '304 Patent. For example, Defendant contributes to the direct infringement of such claims by distributors, customers, subsidiaries, importers, and/or consumers that use, import, purchase, or sell the '304 Accused Products. To the extent that the '304 Accused Products do not directly infringe one or more claims of the '304 Patent, such products contain instructions, such as source code, that are especially adapted to cause the '304 Accused Products to operate in an infringing manner. Such instructions are specifically designed to cause the '304 Accused Products to operate in an infringing manner and are a material part of the invention of the '304 Patent and are not a staple article of commerce suitable for substantial non-infringing use.

44.     On information and belief, despite having knowledge of the '304 Patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '304 Patent, Defendant has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '304 Patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

45.     Plaintiff has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II
### (Infringement of U.S. Patent No. 8,373,743)

46.     Plaintiff incorporates the preceding paragraphs herein by reference.

47.     This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq*.

48.     Plaintiff is the assignee of the '743 Patent, with ownership of all substantial rights in the '743 Patent, including the right to exclude others and to enforce, sue, and recover damages for past, present, and future infringements.

49.     The '743 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code after a full and fair examination.

14

50.     Defendant has and continues to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '743 Patent in this judicial district and elsewhere in Delaware and the United States.

51.     Defendant designs, offers for sale, uses, and sells services, such as Zoom Meetings, (the "'743 Accused Products"), in a manner that infringes the '743 Patent.

52.     Defendant directly infringes the '743 Patent under 35 U.S.C. § 271(a) by using, making, offering for sale, selling, and/or importing the '743 Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '743 Patent.

53.     For example, Defendant infringes claim 1 of the '743 Patent via the '743 Accused Products. Each of the '743 Accused Products is a "system for recording and putting out streams during a live conference." For example, the Zoom Meetings platform is a system that streams videos during a live video conference call and offers recording functionality:



Source: https://www.zoom.com/en/products/virtual-meetings/ (accessed on May 29, 2025).

54.     The '743 Accused Products comprise "a bridge configured to establish the live conference and receive a plurality of streams that are parts of the conference." For example, Zoom Meetings provides a bridge that is configured to establish live video and audio conferencing and receive audio and video input from users (i.e., a plurality of streams that are parts of the conference):



**ZOOM**                                        **Connection Process**
                                                Zoom Video Communications Inc.

*Overview*

Zoom is the leader in modern enterprise video communications, with an easy, reliable cloud platform for video and audio conferencing, collaboration, chat, and webinars across mobile devices, desktop computers, telephones, and room systems. One of the key differentiators that facilitates the ease and reliability of the cloud platform is Zoom's connection process. Zoom's connection process ensures that whenever someone attempts to access the platform there is an optimized path to Zoom's geographically distributed and highly available infrastructure. This white paper discusses that process and the technology behind it.

**Zoom Multimedia Router (MMR)**
A Zoom Multimedia Router is responsible for hosting Zoom meetings and webinars. As the name implies, these servers ensure that the rich offering of voice, video, and content are properly distributed between all participants in a given session.

**Media Routing**
With a successful connection to the optimum Zoom Multimedia Router for the session, the Zoom Client prioritizes creating a connection for each type of media that will be exchanged such as video, audio, and content. Each of these media connections attempt to use Zoom's own protocol and connect via UDP on port 8801. If that connection can not be established, Zoom will also try

Source: https://explore.zoom.us/docs/doc/Zoom%20Connection%20Process%20Whitepaper.pdf (emphasis added).

55.     The '743 Accused Products comprise "a recorder configured to individually record at least one of the plurality of streams." For example, Zoom Meeting's cloud recorder individually records at least one of the video or audio outputs in a Zoom meeting (i.e., one of the plurality of streams):

# Enabling cloud recording



🌐 English (Original) ⌄    📅 2024-11-25 18:33:29    🔗 Copy Permalink

Enabling cloud recording allows hosts to record their event in the Zoom cloud. By default, this setting is automatically enabled for all paid subscribers.

You can also modify cloud recording management settings for hosts, such as automatic recording, require a passcode to view cloud recordings, and set a deletion period for cloud recordings. Hosts can modify individual cloud recording settings for basic and advanced settings for their cloud recordings as needed.

Source: https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0063923 (emphasis added) (accessed on May 29, 2025).

## Basic cloud recording settings

You can select or clear the check boxes next to the following cloud recording features according to what you would like to record in your video. Each selection will be what is recorded.

- **Record a separate audio file of each participant**: Records up to 200 speakers individually and provides you with separate audio files for each speaker. For example, this allows you to have more customization options if you want to edit or apply filters to just one participant's audio to improve the audio quality of the recording. **Note:** The audio for all users who join by phone will be merged into one audio file.

Source: https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0064676 (emphasis added) (accessed on May 29, 2025).

56.    The '743 Accused Products' recorder is configured "to receive a request for at least a portion of the at least one but not all of the plurality of streams." For example, Zoom Meeting's recorder receives a request to record an active speaker, gallery view, audio-only files, or a customized view (i.e., at least one, but not all of the plurality of the streams):

## Basic cloud recording settings

You can select or clear the check boxes next to the following cloud recording features according to what you would like to record in your video. Each selection will be what is recorded.

- **Record active speaker with shared screen**: Record both the active speaker view and shared content on the same video.

- **Record gallery view with shared screen**: Record both gallery view and shared content on the same video.

- **Record active speaker, gallery view and shared screen separately**: Record the active speaker, gallery view and shared screen as separate videos.

  - Select **Active speaker** to record the active speaker only.
  - Select **Gallery view** to record the gallery view only.
  - Select **Shared screen** to record the shared screen only.

- **Record audio-only files**: Record the audio of the video separately. Choose to record one audio file for all participants, a separate audio file of each participant, or both. Audio files are in the M4A file format.

  - **Record one audio file for all participants**: One file is processed for the entire audio of the recording.
  - **Record a separate audio file of each participant**: Records up to 200 speakers individually and provides you with separate audio files for each speaker. For example, this allows you to have more customization options if you want to edit or apply filters to just one participant's audio to improve the audio quality of the recording.
    **Note**: The audio for all users who join by phone will be merged into one audio file.

- **Record production studio customized view from the webinar**: Record the produced view from Production Studio. Learn more about using Production Studio.
  **Note**: This option is enabled by default.

Source:  https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0064676 (emphasis added) (accessed on May 29, 2025).

57.    The '743 Accused Products' recorder is configured "to output only the requested at least a portion of the at least one but not all of the plurality of streams." For example, Zoom Meeting's recorder outputs the requested recording of the active speaker, gallery view, audio-only files, or a customized view (i.e., at least one, but not all of the plurality of the streams) as recordings available for download or sharing.

# How to manage cloud recordings from the recording page

## Share cloud recordings

1. Access recording management.
2. Click the thumbnail of the recording to open it.
3. Click **Share** ↗.
4. Adjust your sharing settings.
5. Click **Copy link and passcode** 🗐, then paste or send the link to your email or desired platform.

## Download cloud recordings

1. Access recording management.
2. Click the thumbnail of the recording to open it.
3. On the recording's page, click **Download** ↓.
   A confirmation prompt will appear.
4. Click **Download** to confirm.
   **Note**: Depending on your setup, you might receive prompts asking for confirmation to download files, choose a save location, or provide additional information. Follow these prompts to complete the download process.

Source: https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0067567
(accessed on May 29, 2025).

58.     The technology discussion above and the exemplary '743 Accused Products provide context for Plaintiff's infringement allegations.

59.     At a minimum, Defendant has known of the '743 Patent at least as early as the filing date of the Complaint. In addition, Defendant has known about the '743 Patent since at least March 8, 2024, when Plaintiff sent correspondence to Defendant via FedEx alerting Defendant to its infringement.

60.     On information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the '743 Accused Products that include or are made using all of the limitations of one or more claims of the '743 Patent to directly infringe one or more claims of the '743 Patent (e.g., claim 1, as discussed above) by using, offering for sale, selling, and/or importing the '743 Accused Products.

Since at least the notice provided on the above-mentioned date, Defendant does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '743 Patent. Defendant intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the '743 Accused Products, creating and/or maintaining established distribution channels for the '743 Accused Products into and within the United States, manufacturing the '743 Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and testing the '743 Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. For example, Defendant advertises and provides technical support to its customers using '743 Accused Products at Zoom.com and Support.Zoom.com.

61.     In the alternative, on information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has contributorily infringed, under U.S.C. § 271(c), one or more claims of the '743 Patent. For example, Defendant contributes to the direct infringement of such claims by distributors, customers, subsidiaries, importers, and/or consumers that use, import, purchase, or sell the '743 Accused Products. To the extent that the '743 Accused Products do not directly infringe one or more claims of the '743 Patent, such products contain instructions, such as source code, that are especially adapted to cause the '743 Accused Products to operate in an infringing manner. Such instructions are specifically designed to cause the '743 Accused Products to operate in an infringing manner and are a material part of the invention of the '743 Patent and are not a staple article of commerce suitable for substantial non-infringing use.

62.    On information and belief, despite having knowledge of the '743 Patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '743 Patent, Defendant has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '743 Patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

63.    Plaintiff has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## **COUNT III**
### **(Infringement of U.S. Patent No. 8,416,937)**

64.    Plaintiff incorporates the preceding paragraphs herein by reference.

65.    This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq*.

66.    Plaintiff is the assignee of the '937 Patent, with ownership of all substantial rights in the '937 Patent, including the right to exclude others and to enforce, sue, and recover damages for past, present, and future infringements.

67.    The '937 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code after a full and fair examination.

68.     Defendant has and continues to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '937 Patent in this judicial district and elsewhere in Delaware and the United States.

69.     Defendant designs, offers for sale, uses, and sells services, such as Zoom Meetings, Zoom Events, and Zoom Webinars (the "'937 Accused Products"), in a manner that infringes the '937 patent.

70.     Defendant directly infringes the '937 Patent under 35 U.S.C. § 271(a) by using, making, offering for sale, selling, and/or importing the '937 Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '937 Patent.

71.     For example, Defendant infringes claim 1 of the '937 Patent via the '937 Accused Products. Defendant, via the '937 Accused Products, including Zoom Meetings, performs a "method of changing moderators during an e-conference." For example, Zoom performs changing of moderators during a conference call using its Zoom Meetings platform:

# Passing host controls to leave the meeting


🌐 English (Original) ⌄    📅 2025-01-30 16:40:04    🔗 Copy Permalink

As the host, you can assign the host controls to another user and leave the meeting. This allows the meeting to continue without you, and the assigned user to have host control over the meeting.

**If the original host is a Licensed user**, the meeting will continue to run for an unlimited time, even if the new host is a free or basic user.

**If the original host is a Basic (free) user**, the meeting will be limited to the 40 minute duration, even if the new host is a **Licensed** user.

‹    **Windows | macOS | Linux**        Web client        iOS        Android

1. Sign in to the Zoom desktop app.
2. Start a meeting and have another participant join you.
3. Start a meeting as the host.
4. In the host controls, click **End**.
5. Click **Leave Meeting**.
6. Assign someone to be the new host, then click **Assign and Leave**.

Source: https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0067794 (accessed May 29, 2025).

72.     The '937 Accused Products comprise "identifying a departure of a first moderator from the e-conference." For example, Zoom identifies the departure of a first host (i.e., moderator) from a Zoom meeting (i.e., e-conference):

# Passing host controls to leave the meeting

🌐 English (Original) ⌄    📅 2025-01-30 16:40:04    🔗 Copy Permalink


As the host, you can assign the host controls to another user and leave the meeting. This allows the meeting to continue without you, and the assigned user to have host control over the meeting.

**If the original host is a Licensed user**, the meeting will continue to run for an unlimited time, even if the new host is a free or basic user.

**If the original host is a Basic (free) user**, the meeting will be limited to the 40 minute duration, even if the new host is a **Licensed** user.

‹    **Windows | macOS | Linux**        Web client        iOS        Android

1. Sign in to the Zoom desktop app.
2. Start a meeting and have another participant join you.
3. Start a meeting as the host.
4. In the host controls, click **End**.
5. Click **Leave Meeting**.
6. Assign someone to be the new host, then click **Assign and Leave**.

Source: https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0067794 (emphasis added) (accessed May 29, 2025).

73.    The '937 Accused Products comprise "identifying, based on a selection by the first moderator, a participant in the e-conference to replace the first moderator." For example, Zoom identifies a replacement host (i.e., moderator) based on the first host's selection of a participant in the meeting:

# Passing host controls to leave the meeting

 English (Original)      2025-01-30 16:40:04      Copy Permalink

As the host, you can assign the host controls to another user and leave the meeting. This allows the meeting to continue without you, and the assigned user to have host control over the meeting.

**If the original host is a Licensed user,** the meeting will continue to run for an unlimited time, even if the new host is a free or basic user.

**If the original host is a Basic (free) user,** the meeting will be limited to the 40 minute duration, even if the new host is a **Licensed** user.

**Windows | macOS | Linux**    Web client    iOS    Android

1. Sign in to the Zoom desktop app.
2. Start a meeting and have another participant join you.
3. Start a meeting as the host.
4. In the host controls, click **End**.
5. Click **Leave Meeting**.
6. Assign someone to be the new host, then click **Assign and Leave**.

Source: https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0067794 (emphasis added) (accessed May 29, 2025).

74.    The '937 Accused Products comprise "promoting the participant to be a replacement moderator while maintaining the e-conference and connections to remaining participants in the e-conference." For example, Zoom promotes the participant to be a replacement

host (i.e., replacement moderator) while allowing the meeting to continue (i.e., maintaining the e-conference and connections to remaining participants in the e-conference):

# Passing host controls to leave the meeting



As the host, you can assign the host controls to another user and leave the meeting. This allows the meeting to continue without you, and the assigned user to have host control over the meeting.

**If the original host is a Licensed user**, the meeting will continue to run for an unlimited time, even if the new host is a free or basic user.

**If the original host is a Basic (free) user**, the meeting will be limited to the 40 minute duration, even if the new host is a **Licensed** user.

Source: https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0067794 (emphasis added) (accessed May 29, 2025).

75.     The technology discussion above and the exemplary '937 Accused Products provide context for Plaintiff's infringement allegations.

76.     At a minimum, Defendant has known of the '937 Patent at least as early as the filing date of the Complaint. In addition, Defendant has known about the '937 Patent since at least March 8, 2024, when Plaintiff sent correspondence to Defendant via FedEx alerting Defendant to its infringement.

77.     On information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the '937 Accused Products that include or are made using all of the limitations of one or more claims of the '937 Patent to directly infringe one or more claims of the '937 Patent (e.g., claim 1, as discussed above) by using, offering for sale, selling, and/or importing the '937 Accused Products. Since at least the notice provided on the above-mentioned date, Defendant does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of

the '937 Patent. Defendant intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the '937 Accused Products, creating and/or maintaining established distribution channels for the '937 Accused Products into and within the United States, manufacturing the '937 Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and testing the '937 Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. For example, Defendant advertises and provides technical support to its customers using '937 Accused Products at Zoom.com and Support.Zoom.com.

78.     In the alternative, on information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has contributorily infringed, under U.S.C. § 271(c), one or more claims of the '937 Patent. For example, Defendant contributes to the direct infringement of such claims by distributors, customers, subsidiaries, importers, and/or consumers that use, import, purchase, or sell the '937 Accused Products. To the extent that the '937 Accused Products do not directly infringe one or more claims of the '937 Patent, such products contain instructions, such as source code, that are especially adapted to cause the '937 Accused Products to operate in an infringing manner. Such instructions are specifically designed to cause the '937 Accused Products to operate in an infringing manner and are a material part of the invention of the '937 Patent and are not a staple article of commerce suitable for substantial non-infringing use.

79.     On information and belief, despite having knowledge of the '937 Patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '937 Patent,

Defendant has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '937 Patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

80.      Plaintiff has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV
### (Infringement of U.S. Patent No. 8,644,886)

81.      Plaintiff incorporates the preceding paragraphs herein by reference.

82.      This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq.*

83.      Plaintiff is the assignee of the '886 Patent, with ownership of all substantial rights in the '886 Patent, including the right to exclude others and to enforce, sue, and recover damages for past, present, and future infringements.

84.      The '886 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code after a full and fair examination.

85.      Defendant has and continues to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '886 Patent in this judicial district and elsewhere in Delaware and the United States.

86.     Defendant designs, offers for sale, uses, and sells services, such as Zoom Meetings, and Zoom Phone (the "'886 Accused Products"), in a manner that infringes the '886 patent.

87.     Defendant directly infringes the '886 Patent under 35 U.S.C. § 271(a) by using, making, offering for sale, selling, and/or importing the '886 Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '886 Patent.

88.     For example, Defendant infringes claim 1 of the '886 Patent via the '886 Accused Products. Defendant, via the '886 Accused Products, including Zoom Meetings, performs a "communication method between communication devices." For example, Zoom performs a communication method using its Zoom Meetings platform to connect devices with video, audio, phone, and chat:

# What is Zoom Video Conferencing?

🌐 English (Original)  ▾     📅 2024-12-06 21:16:00     🔗 Copy Permalink



Zoom is a communications platform that allows users to connect with video, audio, phone, and chat. Using Zoom requires an internet connection and a supported device. Most new users will want to start by creating an account and downloading the Zoom Client for Meetings. Others can review the variety of solutions offered by the Zoom platform and determine which one best fits their needs.

Source: https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0059590 (emphasis added) (accessed May 29. 2025).

89.     The '886 Accused Products comprise "receiving, at a called communication device and as part of a call set-up message, at least one of a text, a picture, a video, and a holographic user message from a first user of a calling communication device, the message being associated with a pending call from the first user to a second user of the called communication device." For example, Zoom receives a message when a first user invites one of their contacts to an on-going Zoom Meetings conference in the form of a pop-up invitation message on a second user's screen, which

contains the second user's profile picture (that the second user has previously chosen in the Profile

Settings) and a text inviting them to the call:

## Profile information and picture section

- **Profile Picture**: Click your profile picture to add or change it. You can also adjust the crop area on your current picture or upload a new one. You can delete your profile picture by clicking **Delete**.

Source: https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0060639
(emphasis added) (accessed on May 29, 2025).



Source: https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0064553
(emphasis added) (accessed on May 29, 2025).

## How to invite others during a meeting

Depending on which Zoom Products and add-ons, you have many options for inviting Zoom contacts, Zoom Rooms, room systems, and dial-in participants to join the current meeting.

1. Sign in to the Zoom desktop app.
2. Start or join a meeting.
3. In the meeting controls, click **Participants**.
4. At the bottom of the **Participants** panel, click **Invite**.
   A pop-up window will appear.
5. In the window, choose from the following invite options:

### Contacts

1. Click the **Contacts** tab.
2. Select a contact's name from the list or search for a contact.
3. Click the individual you would like to invite.
   **Note**: You can select multiple contacts.
   After selecting contact(s), their name(s) will be highlighted in blue, and they will appear in the list at the top of the window.
4. In the lower-right corner, click **Invite**.
   Selected participants will be immediately invited to the current meeting, which will appear on their desktop or mobile screen.

Source: https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0063688
(emphasis added) (accessed on May 29, 2025).



Source: https://it.cornell.edu/zoom/join-zoom-meeting-zoom-room (emphasis added) (accessed on May 29, 2025).

90.    The '886 Accused Products comprises "before the call is answered by the second user, the called communication device extracting the at least one of a text, a picture, a video, and a holographic user message from the call set-up message and displaying said at least one of a text, a picture, a video, and a holographic user message for the second user." For example, a profile picture of the first user is extracted from the call set-up message and displayed to the second user before the call is answered. The Caller's profile picture will even be shown to External Zoom Phone users that don't have prior association with the Zoom Caller:

### Contacts

1. Click the **Contacts** tab.
2. Select a contact's name from the list or search for a contact.
3. Click the individual you would like to invite.
   **Note**: You can select multiple contacts.
   After selecting contact(s), their name(s) will be highlighted in blue, and they will appear in the list at the top of the window.
4. In the lower-right corner, click **Invite**.
   Selected participants will be immediately invited to the current meeting, which will appear on their desktop or mobile screen.

Source: https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0063688 (emphasis added) (accessed on May 29, 2025).



Source: https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0064553 (emphasis added) (accessed on May 29, 2025).

## Common to all scenarios: caller's name and number

All inbound call notifications display the caller's name and number. The name and number will vary based on if the caller is internal or external:

| Scenario | What's displayed in the inbound call notification |
|---|---|
| External caller | • Caller's caller ID name and number<br>• Caller verified icon ✓ (in certain scenarios) |
| Internal Zoom Phone user in the same account<br>or<br>External Zoom Phone that been added to contacts | • Caller's Zoom profile name/picture and extension number<br>• Caller verified icon ✓ |
| External Zoom Phone user | • Caller's profile picture and caller ID name and number<br>• Caller verified icon ✓ |

Source: https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0061291
(emphasis added) (accessed on May 29, 2025).

91.     The technology discussion above and the exemplary '886 Accused Products provide context for Plaintiff's infringement allegations.

92.     At a minimum, Defendant has known of the '886 Patent at least as early as the filing date of the Complaint. In addition, Defendant has known about the '886 Patent since at least March 8, 2024, when Plaintiff sent correspondence to Defendant via FedEx alerting Defendant to its infringement.

93.     On information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the '886 Accused Products that include or are made using all of the limitations of one or more claims of the '886 Patent to directly infringe one or more claims of the '886 patent (e.g., claim 1, as discussed above) by using, offering for sale, selling, and/or importing the '886 Accused Products. Since at least the notice provided on the above-mentioned date, Defendant does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of

the '886 Patent. Defendant intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the '886 Accused Products, creating and/or maintaining established distribution channels for the '886 Accused Products into and within the United States, manufacturing the '886 Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and testing the '886 Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. For example, Defendant advertises and provides technical support to its customers using '886 Accused Products at Zoom.com and Support.Zoom.com.

94.     In the alternative, on information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has contributorily infringed, under U.S.C. § 271(c), one or more claims of the '886 Patent. For example, Defendant contributes to the direct infringement of such claims by distributors, customers, subsidiaries, importers, and/or consumers that use, import, purchase, or sell the '886 Accused Products. To the extent that the '886 Accused Products do not directly infringe one or more claims of the '886 Patent, such products contain instructions, such as source code, that are especially adapted to cause the '886 Accused Products to operate in an infringing manner. Such instructions are specifically designed to cause the '886 Accused Products to operate in an infringing manner and are a material part of the invention of the '886 Patent and are not a staple article of commerce suitable for substantial non-infringing use.

95.     On information and belief, despite having knowledge of the '886 Patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '886 Patent,

Defendant has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '886 Patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

96.    Plaintiff has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V
### (Infringement of U.S. Patent No. 8,700,019)

97.    Plaintiff incorporates the preceding paragraphs herein by reference.

98.    This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq.*

99.    Plaintiff is the assignee of the '019 Patent, with ownership of all substantial rights in the '019 Patent, including the right to exclude others and to enforce, sue, and recover damages for past, present, and future infringements.

100.    The '019 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code after a full and fair examination.

101.    Defendant has and continues to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '019 Patent in this judicial district and elsewhere in Delaware and the United States.

102.     Defendant designs, offers for sale, uses, and sells services, such as Zoom Meetings (the "'019 Accused Products"), in a manner that infringes the '019 Patent.

103.     Defendant directly infringes the '019 Patent under 35 U.S.C. § 271(a) by using, making, offering for sale, selling, and/or importing the '019 Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '019 Patent.

104.     For example, Defendant infringes claim 1 of the '019 Patent via the '019 Accused Products. Defendant, via the '019 Accused Products, including Zoom Meetings, performs a "method comprising: provisioning a pairing relationship between at least first and second communication devices, wherein the first communication device is a pairing communication device, and wherein the second communication device is a paired communication device." For example, Zoom using its Zoom Meetings platform provisions a pairing relationship between a user's mobile device or computer (i.e., first communication device) and a Zoom Room (i.e., second communication device):

# Pairing a Zoom Room with the desktop app

🌐 English (Original)  ⌄     📅 2025-05-20 18:53:20     🔗 Copy Permalink



With heightened avoidance of shared touch surfaces as people return to offices, as well as Zoom Room controllers not always being in the most convenient location, the Zoom desktop app can pair with your Zoom Room to allow you to start or join a meeting on the Zoom Room from the desktop app.

You can also pair the Zoom mobile app with a nearby Zoom Room, to start or join meetings on the Zoom Room as well as control the Zoom Room directly from your mobile device.

Source: https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0066438
(emphasis added) (accessed May 29, 2025).

# Pairing/Controlling Zoom Rooms from mobile app



With heightened avoidance of shared touch surfaces as people return to offices, as well as Zoom Room controllers not always being in the most convenient location, the Zoom mobile app can pair with your Zoom Room to provide some Zoom Room controls on your mobile device. This allows you to pair with the Zoom Room you are in, start or join a meeting, and control the Zoom Room all on your personal mobile device without having to interact with the local Zoom Room controller tablet beyond perhaps a tap to wake the Zoom Room.

You can also pair the Zoom desktop client with a nearby Zoom Room, to start or join meetings on the Zoom Room.

Source: https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0065988 (emphasis added) (accessed May 29, 2025).

105.    The '019 Accused Products comprise "one of receiving or initiating a call with respect to the first communication device." For example, Zoom receives a request from the desktop client or mobile app (i.e., first communication device) to start or join a meeting (i.e., receiving a call):

With heightened avoidance of shared touch surfaces as people return to offices, as well as Zoom Room controllers not always being in the most convenient location, the Zoom desktop app can pair with your Zoom Room to allow you to start or join a meeting on the Zoom Room from the desktop app.

You can also pair the Zoom mobile app with a nearby Zoom Room, to start or join meetings on the Zoom Room as well as control the Zoom Room directly from your mobile device.

Source: https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0066438 (emphasis added) (accessed May 29, 2025).

106.    The '019 Accused Products comprise "intercepting the call prior to delivery of the call to a called party." For example, Zoom prompts the user before allowing the first communication device to start or join the meeting, thus intercepting the call prior to delivery of the call. The user is promoted to join from the Zoom Room (i.e., second communication device):

# How to join a meeting using the desktop client in a Zoom Room



# How to join a meeting using the mobile app in a Zoom Room



Source: https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0064055 (emphasis added) (accessed May 29, 2025).

107.    The '019 Accused Products comprise "establishing an application sequence for the call with respect to the first communication device." For example, If the user selects "Join from Room," Zoom establishes an application sequence for the call, e.g., using companion mode, which includes an application to be run on the first communication device during the call, applications on Zoom's servers to manage and process the call, and applications on the second communication device:

You can use the Zoom desktop client to join a scheduled meeting that has already been started in a Zoom Room with the client's audio and video disabled. You can screen share, chat, and manage participants from the desktop client, and use the Zoom Room for video and audio communication.

## How to join a meeting using the desktop client in a Zoom Room



## How to join a meeting using the mobile app in a Zoom Room



Source: https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0064055 (emphasis added) (accessed May 29, 2025).

5. Select **Join from Room** to have the paired Zoom Room join the meeting.
   Your mobile device will also remain connected to the meeting, but will have video and audio off.
6. From the mobile app you will have the following controls:
   - **Leave**: Tap the **Leave** option to leave the meeting either:
     - **Leave from Room**: Disconnect the Zoom Room and your paired mobile device from the meeting. The mobile app will also unpair from the Zoom Room.
     - **Leave from My Phone**: Disconnect and unpair your mobile device from the meeting and Zoom Room. The Zoom Room will remain connected to the meeting.
   - **Room Controller**: Selecting this option will open the Zoom Rooms controller app, or direct you to download from the relevant app store if not already installed. Available controls are detailed in the section below.

Source: https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0065988
(emphasis added) (accessed May 29, 2025).

108.    The '019 Accused Products comprise "establishing a media session between the second communication device and a third communication device as part of the call, wherein media is not provided to the first communication device." For example, Zoom establishes a media session between the Zoom Room (i.e., second communication device) and one or more other participants in the meeting (i.e., third communication device) to transmit audio and/or video between the participants in the meeting. The desktop client or mobile app does not receive audio and video for the call:

You can use the Zoom desktop client to join a scheduled meeting that has already been started in a Zoom Room with the client's audio and video disabled. You can screen share, chat, and manage participants from the desktop client, and use the Zoom Room for video and audio communication.

Source: https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0064055
(emphasis added) (accessed May 29, 2025).

5. Select **Join from Room** to have the paired Zoom Room join the meeting.
   Your mobile device will also remain connected to the meeting, but will have video and audio off.

Source: https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0065988
(emphasis added) (accessed May 29, 2025).

109.    The '019 Accused Products comprise "enabling control for the call by the first communication device." For example, If the user used a desktop client to join the meeting, Zoom enables the desktop client to screen share, chat, and manage participants from the desktop client (i.e., control for the call) and if the user used a mobile app to join the meeting, Zoom enables the

mobile app to mute the Zoom Room, control cameras, share content, leave, and end the meeting (i.e., control for the call):

# Joining a meeting in a Zoom Room from the Zoom client

🌐 English (Original) ⌄     📅 2024-12-20 07:10:02     🔗 Copy Permalink

You can use the Zoom desktop client to join a scheduled meeting that has already been started in a Zoom Room with the client's audio and video disabled. You can screen share, chat, and manage participants from the desktop client, and use the Zoom Room for video and audio communication.

Source: https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0064055 (emphasis added) (accessed May 29, 2025).

## Controlling the Zoom Room on your mobile device

When controlling the Zoom Room from your paired mobile device, you will have condensed controls that mirror the main Zoom Room controller. The following controls will be available to you:

- **Mute** 🎤 / **Unmute** 🎤 : Mute or unmute the room's microphone.
- **Start Video** 📹 / **Stop Video** 📹 : Start or stop the room's video camera.
- **Share Content or Camera**: Display instructions to share content from your laptop, mobile device, or secondary camera.
  - **Multiple Participants Can Share Simultaneously**: Tap to allow multiple participants to share their screen or content during the meeting.
  - **Advanced Sharing Options**: Select who can share in your meeting and if you want only the host or any participant to be able to start a new share when someone is sharing.
    - **Who Can Share?**: Choose if you would like to be able to share; **Only Host** or **All Participants**.
    - **Who can start sharing when someone else is sharing**: Choose who can interrupt someone sharing content; **Only Host** or **All participants**.
    - **Optimize Full-screen Video Sharing**: Check this if you will be sharing a video clip in full screen mode. Do not check this otherwise, as it may cause the shared screen to be blurry.
- **Camera Control**: Change PTZ camera settings, presets, or switch to different camera from a list.
- **Leave / End**: **Leave** the meeting or **End Meeting for All** (if the Zoom Room is the host of the meeting)

Source: https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0065988 (accessed May 29, 2025).

110.     The technology discussion above and the exemplary '019 Accused Products provide context for Plaintiff's infringement allegations.

111.    At a minimum, Defendant has known of the '019 Patent at least as early as the filing date of the Complaint. In addition, Defendant has known about the '019 Patent since at least March 8, 2024, when Plaintiff sent correspondence to Defendant via FedEx alerting Defendant to its infringement.

112.    On information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the '019 Accused Products that include or are made using all of the limitations of one or more claims of the '019 Patent to directly infringe one or more claims of the '019 Patent (e.g., claim 1, as discussed above) by using, offering for sale, selling, and/or importing the '019 Accused Products. Since at least the notice provided on the above-mentioned date, Defendant does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '019 Patent. Defendant intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the '019 Accused Products, creating and/or maintaining established distribution channels for the '019 Accused Products into and within the United States, manufacturing the '019 Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and testing the '019 Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. For example, Defendant advertises and provides technical support to its customers using '019 Accused Products at Zoom.com and Support.Zoom.com.

113.    In the alternative, on information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has contributorily infringed, under U.S.C. § 271(c), one or more claims of the '019 Patent. For example, Defendant contributes to the direct infringement of such claims by distributors, customers, subsidiaries, importers, and/or consumers that use, import, purchase, or sell the '019 Accused Products. To the extent that the '019 Accused Products do not directly infringe one or more claims of the '019 Patent, such products contain instructions, such as source code, that are especially adapted to cause the '019 Accused Products to operate in an infringing manner. Such instructions are specifically designed to cause the '019 Accused Products to operate in an infringing manner and are a material part of the invention of the '019 Patent and are not a staple article of commerce suitable for substantial non-infringing use.

114.    On information and belief, despite having knowledge of the '019 Patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '019 Patent, Defendant has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '019 Patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

115.    Plaintiff has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI

### (Infringement of U.S. Patent No. 9,019,869)

116.    Plaintiff incorporates the preceding paragraphs herein by reference.

117.    This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq*.

118.    Plaintiff is the assignee of the '869 Patent, with ownership of all substantial rights in the '869 Patent, including the right to exclude others and to enforce, sue, and recover damages for past, present, and future infringements.

119.    The '869 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code after a full and fair examination.

120.    Defendant has and continues to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '869 Patent in this judicial district and elsewhere in Delaware and the United States.

121.    Defendant designs, offers for sale, uses, and sells services, such as Zoom Meetings (the "'869 Accused Products"), in a manner that infringes the '869 Patent.

122.    Defendant directly infringes the '869 Patent under 35 U.S.C. § 271(a) by using, making, offering for sale, selling, and/or importing the '869 Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '869 Patent.

123.    For example, Defendant infringes claim 1 of the '869 Patent via the '869 Accused Products. Defendant, via the '869 Accused Products, including Zoom Meetings, performs a "method to enable selective suppression of an audible indication in a SIP-based call." For example, Zoom using its Zoom Meetings platform selectively suppresses an audible indication in a SIP-based call:



**Zoom Conference Room Connector and Partner Integration**

Zoom Conference Room Connector allows customers, partners and anyone using a Microsoft, Google or Cisco's standards based SIP/H.323 equipment to join a Zoom Meeting. Interoperability between providers and devices is key to successful video communication and hybrid work.

Source: https://explore.zoom.us/en/products/zoom-rooms/room-connector/ (emphasis added) (accessed May 29, 2025).

## Advanced commands

When joining from a SIP/H.323 device into a Zoom Meeting, advanced commands can be added to the dial string to enable certain features, or force certain in-call behavior as well.

200006          Suppress audio prompts when joining a meeting.

Source: https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0065727 (emphasis added) (accessed May 29, 2025).

124.    The '869 Accused Products receive "by a SIP conferencing server, a message from a caller to initiate a SIP-based call, wherein the message comprises a header section." For example, Every SIP-based call is initiated with an INVITE message, which includes a header section. The INVITE message is sent from the user's device to a Zoom data center:

# SIP dial string format

When dialing into a Zoom Meeting or Zoom Webinar using the SIP protocol, <u>you can dial into a specific regional data center by utilizing the</u> **IP address** or **SIP Domain** <u>for the data center</u> listed on the **H.323/SIP Room Connector** page of your account.

Source: https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0065727 (emphasis added) (accessed May 29, 2025).



Figure 1: SIP session setup example with SIP trapezoid

```
INVITE sip:bob@biloxi.com SIP/2.0
Via: SIP/2.0/UDP pc33.atlanta.com;branch=z9hG4bK776asdhds
Max-Forwards: 70
To: Bob <sip:bob@biloxi.com>
From: Alice <sip:alice@atlanta.com>;tag=1928301774
Call-ID: a84b4c76e66710@pc33.atlanta.com
CSeq: 314159 INVITE
Contact: <sip:alice@pc33.atlanta.com>
Content-Type: application/sdp
Content-Length: 142
```

```
    (Alice's SDP not shown)
```

The first line of the text-encoded message contains the method name
(INVITE).  The lines that follow are a list of header fields.  This
example contains a minimum required set.  The header fields are
briefly described below:

Sources: https://www.rfc-editor.org/rfc/rfc3261.txt, page 11(emphasis added).

125.    The '869 Accused Products searches "the header section for a predetermined

header." For example, The Zoom data center searches the received INVITE message for a To

header. The To header contains a recipient Uniform Resource Identifier (URI):

```
INVITE sip:bob@biloxi.com SIP/2.0
Via: SIP/2.0/UDP pc33.atlanta.com;branch=z9hG4bK776asdhds
Max-Forwards: 70
To: Bob <sip:bob@biloxi.com>
From: Alice <sip:alice@atlanta.com>;tag=1928301774
Call-ID: a84b4c76e66710@pc33.atlanta.com
CSeq: 314159 INVITE
Contact: <sip:alice@pc33.atlanta.com>
Content-Type: application/sdp
Content-Length: 142
```

```
    (Alice's SDP not shown)
```

The first line of the text-encoded message contains the method name
(INVITE).  The lines that follow are a list of header fields.  This
example contains a minimum required set.  The header fields are
briefly described below:

```
To contains a display name (Bob) and a SIP or SIPS URI
(sip:bob@biloxi.com) towards which the request was originally
directed.  Display names are described in RFC 2822 [3].
```

Source: https://www.rfc-editor.org/rfc/rfc3261.txt, page 11-12 (emphasis added).

126.    The '869 Accused Products if the predetermined header is found, determines "a field and a corresponding field value from the predetermined header, wherein the field value comprises information relating to the selective suppression of the audible indication." For example, if the To header is found, Zoom parses the URI for fields, including Meeting ID, Passcode, and Command fields. Zoom determines the Command field and a corresponding value for the Command field. If the corresponding value for the Command field is 200006, the field value relates to the selective suppression of audio prompts when joining the meeting:

# SIP dial string format

When dialing into a Zoom Meeting or Zoom Webinar using the SIP protocol, you can dial into a specific regional data center by utilizing the **IP address** or **SIP Domain** for the data center listed on the **H.323/SIP Room Connector** page of your account.

## Full SIP dial string format

[Meeting ID].[Passcode].[Command].[Host Key].[Reserved].[Dial Code]@[IP Address]

or

[Meeting ID].[Passcode].[Command].[Host Key].[Reserved].[Dial Code]@zoomcrc.com

# Advanced commands

When joining from a SIP/H.323 device into a Zoom Meeting, advanced commands can be added to the dial string to enable certain features, or force certain in-call behavior as well.

200006                  Suppress audio prompts when joining a meeting.

Source: https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0065727 (emphasis added) (accessed May 29, 2025).

127.    The '869 Accused Products stores "the field value in a memory, wherein the stored field value is specific to the field and to the caller." For example, The Zoom data center will store the field value 200006 in a memory to indicate that audio prompts should be suppressed when the user's SIP device joins the meeting. The stored field value is specific to the Command field, as Zoom processes this value specifically as a SIP dial string command. The field value is also specific to the user, as users can only select features including audio prompt suppression for themselves and not for other participants in the meeting:

## Advanced commands

When joining from a SIP/H.323 device into a Zoom Meeting, advanced commands can be added to the dial string to enable certain features, or force certain in-call behavior as well.

200006          Suppress audio prompts when joining a meeting.

Source: https://support.zoom.com/hc/en/article?id=zm_kb&sysparm_article=KB0065727
(emphasis added) (accessed May 29, 2025).

128.    The technology discussion above and the exemplary '869 Accused Products provide context for Plaintiff's infringement allegations.

129.    At a minimum, Defendant has known of the '869 Patent at least as early as the filing date of the Complaint. In addition, Defendant has known about the '869 Patent since at least March 8, 2024, when Plaintiff sent correspondence to Defendant via FedEx alerting Defendant to its infringement.

130.    On information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the '869 Accused Products that include or are made using all of the limitations of one or more claims of the '869 Patent to directly infringe one or more claims of the '869 Patent (e.g., claim 1, as

discussed above) by using, offering for sale, selling, and/or importing the '869 Accused Products. Since at least the notice provided on the above-mentioned date, Defendant does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '869 Patent. Defendant intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the '869 Accused Products, creating and/or maintaining established distribution channels for the '869 Accused Products into and within the United States, manufacturing the '869 Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and testing the '869 Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. For example, Defendant advertises and provides technical support to its customers using '869 Accused Products at Zoom.com and Support.Zoom.com.

131.    In the alternative, on information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has contributorily infringed, under U.S.C. § 271(c), one or more claims of the '869 Patent. For example, Defendant contributes to the direct infringement of such claims by distributors, customers, subsidiaries, importers, and/or consumers that use, import, purchase, or sell the '869 Accused Products. To the extent that the '869 Accused Products do not directly infringe one or more claims of the '869 Patent, such products contain instructions, such as source code, that are especially adapted to cause the '869 Accused Products to operate in an infringing manner. Such instructions are specifically designed to cause the '869 Accused Products to operate in an infringing manner and are a material part of

48

the invention of the '869 Patent and are not a staple article of commerce suitable for substantial non-infringing use.

132.    On information and belief, despite having knowledge of the '869 Patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '869 Patent, Defendant has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '869 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

133.    Plaintiff has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## **CONCLUSION**

134.    Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts, and willful infringement, in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

135.    Plaintiff has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case within the meaning of 35 U.S.C. § 285, and Plaintiff is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

**JURY DEMAND**

136.    Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**PRAYER FOR RELIEF**

137.    Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

1.  A judgment that Defendant has infringed the Asserted Patents as alleged herein, directly and/or indirectly by way of inducing infringement of such patents;

2.  A judgment for an accounting of all damages sustained by Plaintiff as a result of the acts of infringement by Defendant;

3.  A judgment and order requiring Defendant to pay Plaintiff damages under 35 U.S.C. § 284, including up to treble damages as provided by 35 U.S.C. § 284, and any royalties determined to be appropriate;

4.  A judgment and order requiring Defendant to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

5.  A judgment and order finding this to be an exceptional case and requiring Defendant to pay the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285; and

6.  Such other and further relief as the Court deems just and equitable.

Dated: May 30, 2025                          BAYARD, P.A.

OF COUNSEL:                                  */s/ Stephen B. Brauerman*
                                             Stephen B. Brauerman (#4952)
Patrick J. Conroy                            Ronald P. Golden III (#6254)
Justin B. Kimble                             600 N. King Street, Suite 400
Jon Rastegar                                 P.O. Box 25130
Nathan L. Levenson                           Wilmington, Delaware 19801
NELSON BUMGARDNER CONROY PC                  (302) 655-5000
2727 N. Harwood St., Suite 250               sbrauerman@bayardlaw.com
Dallas, Texas 75201                          rgolden@bayardlaw.com
 (817) 377-9111
pat@nelbum.com                               *Attorneys for Plaintiff*
justin@nelbum.com                            *Arlington Technologies LLC*
jon@nelbum.com
nathan@nelbum.com